### LANHAM v. GLOVER.

HOMESTEAD.—A widow in possession with her children of a homestead set apart to her and them out of the real estate of her husband, as against his debts, is *not* entitled to a second homestead for herself, as the head of a family, against her debts, out of lands set apart to her as dower. Martin *v.* Bowie, 37 S. C., 118, construed. MR. CHIEF JUSTICE MCIVER, *dissenting.*

Before BENET, J., Edgefield, November, 1894. Affirmed.

Action by J. L. Lanham against J. W. M. Glover to set aside certain conveyances, and for the possession of a tract of land. Judgment for plaintiff.

Defendant appeals, upon the following exceptions:

You will please take notice that, pursuant to the notice of intention to appeal in the above stated case, heretofore served upon you, the defendant, J. M. W. Glover, above named, now makes and serves the following exceptions, for the purpose of an appeal to the Supreme Court of this State from the decree of his honor, Judge W. C. Benet, herein filed on 9th. February, 1895, to wit:

1. Because his honor erred in holding and deciding that Mrs. Glover could not claim a homestead as the head of a

family in her own lands, as against her own debts, while she was enjoying with her children the homestead set off to her and her children in her husband's lands, as against his debts.

2. Because his honor erred in holding and deciding as follows: "In adjudicating the right of homestead in this case, I hold that Mrs. Glover, at the time of the execution of her deed to T. M. Glover, in 1885, was not entitled to homestead in the land in question."

3. Because his honor erred in holding that to allow Mrs. Glover to claim homestead in her own land, as against her own debts, would be giving her two homesteads.

4. Because his honor erred in holding and deciding as follows: "But admitting, for the sake of argument, that Mrs. Glover was entitled to a homestead exemption in the dower tract of land, it cannot be maintained that this right was taken from her by a conveyance that was fraudulent and conveyed nothing. The right, if it existed, did not descend from her to T. M. Glover, and from him to the defendant; it reverted to her, or, rather, remained in her."

5. Because his honor erred in holding and decreeing as follows: "I hold, therefore, that the defendant, J. M. W. Glover, did not take a good title to Mrs. Glover's homestead exemption; but, on the contrary, as party to the fraud, he took no title at all to any of the land in question."

6. Because his honor erred in holding and deciding that the deed made by Mrs. Glover in 1885 to T. M. Glover, and the deed by T. M. Glover to J. M. W. Glover in 1891, was fraudulent and conveyed nothing, when it is respectfully submitted that he should have held that, as to her homestead exemption in said land, the said Mrs. Glover could not commit a fraud as against her creditors by conveying the same.

7. Because his honor erred in not allowing the defendant the benefit of Mrs. Glover's homestead exemption in the dower tract of land in dispute, as she had no estate in the homestead tract of land set off to her and her children

jointly; and if Mrs. Glover had any estate or interest therein, it was only to the extent of one-third thereof; and it is respectfully submitted that his honor should have adjudged that the said Mrs. Glover was entitled to $666⅔ at least as a homestead, as against her own debts, in said dower tract when she sold the same to T. M. Glover in 1885, and that as to so much of said dower tract, she could not commit, under the law, a fraud upon her creditors.

8. Because his honor erred in adjudging that the plaintiff was entitled to the entire tract of land in dispute, whereas he should have held that the defendant was entitled to Mrs. Glover's homestead exemption therein, and should have adjudged the right to be in the defendant, and should have allowed him to apply to the proper tribunal to have the same set off to him.

9. Because his honor erred in holding that the defendant's claim as to the homestead in the lands in dispute has no foundation in law or equity.

*Messrs. Folk & Folk* and *J. Wm. Thurmond*, for appellant.

*Mr. N. G. Evans*, contra.

March 9, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE. The defendant below has appealed to this court from the decree of Judge Benet herein, denying to him a homestead in the lands in question. The grounds of appeal will be reported. An examination of them will show that they but present different phases of the defendant's claim to said homestead. In order to make plain our views of this contention, a statement of the admitted facts out of which this question of homestead has arisen will be necessary. In the year 1875, the husband of Mrs. C. F. Glover died intestate. The administrator of the personal estate of such deceased husband filed his complaint in the court of probate for Edgefield County against Mrs. C. F. Glover and her children, as defendants, to procure the sale of intestate's lands to aid the personalty of

his estate in the payment of debts. Under the action of the court of probate, Mrs. C. F. Glover, on her claim of dower, had a tract of land, containing 342 acres, set apart to her as her estate of dower in the lands of her deceased husband. She and her children—of whom the appellant was one—had a homestead in the lands of the intestate set apart to them. This homestead they still possess and enjoy. Between the dates 1875 and 1885 Mrs. C. F. Glover contracted a debt which, in 1894, amounted to $871.15. Thereafter, in the year 1885, Mrs. C. F. Glover, for no consideration whatsoever, and in order to defeat, delay, and hinder her own creditors from recovering out of her property the payment of their honest claims against her, conveyed her dower lands, containing 342 acres, to one T. M. Glover; and in 1891 this T. M. Glover, at the instance of Mrs. C. F. Glover, for no consideration, and in order to defeat, hinder, and delay the creditors of the said Mrs. C. F. Glover from collecting their just demands owing by her, conveyed this same tract of land to her son, J. M. W. Glover, and this J. M. W. Glover well knew of all these plans. In 1894 the plaintiff, J. C. Lanham, recovered his judgment against Mrs. C. F. Glover, on a debt to him contracted by her between the years 1875 and 1885, for the sum of $871.15. The sheriff of Edgefield made a return of *nulla bona* on the execution under this judgment, then levied upon and sold all her estate in the tract of 342 acres of land, and at this sale the plaintiff became the purchaser and received the deed of said lands from said sheriff. Immediately afterwards he brought his suit against the said J. M. W. Glover to recover said lands—for damages in their retention—and also sought for a cancellation of the deed from Mrs. C. F. Glover to T. M. Glover, as well as that of T. M. Glover to J. M. W. Glover, on the ground of legal fraud. It may be stated that the complaint in the main recited the foregoing facts as the basis for the relief sought by the plaintiff. The defendant, J. M. W. Glover, in his answer, made a denial of the facts, and claimed, at any

rate, no matter what the facts might be, that he was entitled to have set apart to him the homestead of Mrs. C. F. Glover in said tract of land. The action came on for trial before his honor, Judge Benet, and a jury, but the Circuit Judge withdrew the question of homestead from the jury. To this conduct of the Circuit Judge no objection was made by the defendant. The jury found for the plaintiff the land in dispute.

Immediately thereafter the Circuit Judge heard the question as to this claim of homestead, and after a careful consideration thereof, he decided that Mrs. C. F. Glover never had any right of homestead in this tract of land, and of course, therefore, this defendant could lay no claim to a right in this land that his grantor, Mrs. C. F. Glover, never possessed. The ground upon which the Circuit Judge bottomed this conclusion was: that Mrs. C. F. Glover already had a homestead set apart to her, in which she was then in the full enjoyment, to wit: that set apart to her out of her deceased husband's lands, in the year 1875, and that to allow her a right of homestead in her own lands, would be to acknowledge that the same person could have and enjoy two homesteads at one and the same time. We concur in this conclusion of the Circuit Judge. Briefly stated, these are the grounds for concurrence. Our State Constitution, and laws to effectuate the same, have declared: "* * * as will exempt from attachment and sale under any mesne or final process issued from any court, to the head of any family residing in this State, a homestead in lands, whether held in fee or any lesser estate, not to exceed in value $1,000. * * *" It seems to us that, under this provision of our organic law, *a* homestead not to exceed in value $1,000, is contemplated, and when this has been set apart, and is in existence at the time another or second homestead is sought to be carried out, there is no longer any constitutional warrant for such second homestead. Reference has been made to *Martin* v. *Bowie*, 37 S. C., 118, as authority for a contrary doctrine in our deci-

sion, but an examination of that case will show that such
a claim is unfounded.   In *Martin* v. *Bowie, supra,* all that
this court held was, that if a right of homestead existed in
one D. S. Branyon at the time the sheriff sold a tract of
land worth more than $1,000, that a purchaser at such sale
did not take, under his sheriff's deed, Branyon's homestead,
although such homestead had never been formally set apart
to Branyon, upon the ground that there did not exist in the
law any right in the sheriff to levy upon and sell the home-
stead of Branyon, and hence his deed could not convey
such homestead.   Of course, it is manifest that this decision
was based upon the fact that a right of Branyon to a home-
stead in the tract of land sold by the sheriff *was a fact.*
In the case at bar, the right to a homestead in Mrs. C. F.
Glover in the 342 acre tract of land could not and did not
exist, because she already has set apart to her *a homestead,*
and this homestead so set apart in 1875 she was then en-
joying.   The Constitution of this State and the laws of
this State carrying the Constitution into effect as to the
homestead, are the only basis for the claim of homestead.
When, therefore, a homestead under the same has been set
apart, and is then being enjoyed, there can be no second
homestead.

It must be observed, that no question has been raised by
the appellant as to the right of the Circuit Judge to with-
draw the matter of homestead from the jury, nor is there
any objection to the verdict of the jury.   We must take the
case as we find it, and consider the objections to the judg-
ment of the Circuit Court as they appear in the record.   It
follows, therefore, that there was no error here.

It is the judgment of this court, that the judgment of the
Circuit Court be affirmed.                          ,

MR. JUSTICE GARY, *concurring.*   Section 32, art. 2, of the
Constitution of 1868, under which this action arose, pro-
vided: "The General Assembly shall enact such laws as
will exempt from attachment and sale, under any mesne or

final process issued from any court, to the head of any family residing in this State, a homestead in lands, whether held in fee or any lesser estate, not to exceed in value one thousand dollars, with the yearly products thereof; and to every head of a family residing in this State, whether entitled to a homestead exemption in lands or not, personal property not to exceed in value the sum of five hundred dollars: Provided, That in case any woman having a separate estate shall be married to the head of a family who has not of his own sufficient property to constitute a homestead as hereinbefore provided, said married woman shall be entitled to a like exemption as provided for the head of a family: Provided further, That there shall not be an allowance of more than one thousand dollars worth of real estate and more than five hundred dollars worth of personal property to the husband and wife jointly. * * *"

During the lifetime of Mrs. C. F. Glover's husband, she and her husband could not have claimed a homestead exemption in more than $1,000 worth of real estate and $500 worth of personal property. It is, however, contended that when he died, his widow could claim a homestead exemption in his real estate to the amount in value of $1,000, and also a homestead in her separate real estate to the same amount in value, thus aggregating $2,000, as a homestead exemption. This, in my opinion, would be against the spirit, at least, of the Constitution, and would give to the head of one family two homesteads.

If the framers of the Constitution intended that a woman should have a homestead exemption in her separate estate, irrespective of the homestead exemption in her husband's property, why did they provide that she should not claim this exemption except when the head of a family did not have of his own sufficient to constitute a homestead as provided by the Constitution. Mrs. Glover was not compelled to claim a homestead exemption in her husband's estate. She had the right to elect whether she would claim it in his estate or her own separate estate, but she was entitled

to only one homestead exemption. Having elected to claim it in her husband's estate, she thus deprived herself of the right to claim it in her separate estate. I, therefore, concur in the opinion of Mr. Justice Pope.

MR. CHIEF JUSTICE MCIVER, *dissenting.* Being unable to concur in the view taken of this case by Mr. Justice Pope, I propose to state, as briefly as practicable, the grounds of my dissent. The facts are so fully stated in the opinion prepared by Mr. Justice·Pope as to supercede the necessity for any restatement here. It seems to me that the case turns entirely upon the inqniry whether Mrs. C. F. Glover was entitled to a homestead exemption in the 342 acres of land allotted to her as her dower out of her husband's estate. For if she was so entitled, it matters not whether the portion of the land so exempted passed, under her deed, to T. M. Glover and, under his deed, to the defendant, or whether it remained in her, because, this being an action to recover possession of real estate, the rule is well settled that the plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's title. Hence it follows, that when a person in possession is sought to be ejected therefrom by an action like this, the fact that he shows a superior title outstanding in favor of *any* other person, to the whole or any part of the land, is a complete defence, without showing that he is connected with such outstanding superior title. If such outstanding superior title covers the whole of the land, then the plaintiff's action fails entirely; but if it covers only part of the land, then it fails as to such part. Now, it cannot be denied that the plaintiff's title rests entirely upon the sheriff's sale, and only covers such property as the sheriff was legally authorized to sell. But as a judgment, by express statutory provision, is no lien upon the homestead, which, for that reason, could not be legally sold by the sheriff under execution, it follows, necessarily, that the plaintiff never required any title to so much of the land as may have been covered by the home-

stead exemption. As was said in *Martin* v. *Bowie*, 37 S. C., at pages 117, 118: "In view of the express provision in the proviso to section 310 of the Code of Procedure, declaring that final judgments shall not, in any case, be a lien on the real property of the judgment debtor exempt from attachment, levy, and sale under the Constitution, and of the decisions of this court in the cases of *Cantrell* v. *Fowler*, 24 S. C., 424, and *Ketchin* v. *McCarley*, 26 *Id.*, 1, it cannot be doubted that the judgments under which the sheriff undertook to sell the land in question, never had a lien on so much thereof as might be included in the homestead of the judgment debtor; and this is so whether such homestead had been actually laid off at the time of, or before the sale, or not. From this it follows, necessarily, that the sale of so much of the land as would be embraced within the homestead of the judgment debtor was without authority, and the plaintiffs, who were the purchasers at such sale, acquired no title to so much of the land as would be included in the judgment debtor's homestead, if he was entitled to any."

So that, as I have said, the real question in the case is, whether Mrs. Glover ever was entitled to a homestead in the land in question? If she was, then the plaintiff could only recover so much of the land as would not be embraced in her homestead exemption; but if she was not, then the plaintiff was entitled to recover the whole of the land, and the judgment below must stand.

It has not been suggested, and could not well be, that Mrs. Glover could not claim a homestead in this land, because, being assigned to her as dower, she had only a life estate therein, for the Constitution, as amended in 1880, expressly provides for a homestead in lands, "whether held in fee or any lesser estate." The real contention is, that Mrs. Glover could not be entitled to a homestead in the land here in question, because, in the proceedings for the settlement of her deceased husband's estate, a homestead had been assigned to her and her children out of the lands

of her husband, against his debts, under the special pro-
visions of the statute to that effect.   The question is, there-
fore, narrowed down to the inquiry, whether the fact that a
homestead had been assigned to the widow *and children*
out of the lands of the deceased husband and father, *against
his debts*, precludes the widow from afterwards claiming a
homestead *out of her own lands* against *her own debts*.   I
must confess that I am unable to perceive any sufficient
reason why it should.   The argument is that the Constitu-
tion only provides for *one* homestead, and to show this,
stress is laid upon the fact that the expression used in the
Constitution is "*a* homestead."   This, it seems to me, is
rather a narrow view of this beneficent constitutional pro-
vision.   The manifest object of the Constitution was to
protect a certain portion of every debtor's property, who is
the head of a family, from seizure and sale by his creditors,
in satisfaction of any debts which he may owe, except debts
of a certain class specially excepted.   And the statute (Rev.
Stat., sec. 2129,) supplements this constitutional provision
by providing, substantially, that if the husband (who was
the head of the family) be dead, the widow and children
shall be entitled to have family homestead exempted, in
like manner as if the husband were living.   Whether the
legislature had the power thus to supplement the constitu-
tional provision, is a question which has not been raised in
this case, and I do not propose to raise it here.   Assuming
this statutory provision to be constitutional, it is very man-
ifest that its object was to secure to the widow and children
the same exemption which the husband, if living, could
claim—that is to say, an exemption of the prescribed por-
tion of *his* property from being subject to the payment of
*his* debts by any legal process—and that is the construction,
as I understand it, which has been uniformly placed upon
the statutory provision.   See *Horsford* v. *Wynn*, 22 S. C.,
309, and again reported in 26 S. C., 130, which, while not
deciding the point here presented, plainly recognizes the
difference between a homestead exemption under the statu-

tory provision and a claim of homestead by a judgment debtor *out of his own property* against *his own debts*. Indeed, it seems to me that the difference is manifest. In the one case the exemption is *out of the deceased husband's property, in favor of his* wife *and children*, and against *his debts* only, while in the other case the exemption is claimed out of the judgment debtor's *own property*, in favor of *himself* as the head of a family, and against *his own debts*. They differ in the property out of which the exemption is claimed, in the persons in whose favor the exemption is allowed, and in the debts against which the exemption is interposed. I do not see, therefore, why the exemption heretofore allowed can defeat the one now claimed. Indeed, as Mrs. Glover clearly fulfills all the conditions upon which the Constitution expressly allows the exemption, I do not see how her claim can be disallowed. She was, unquestionably, the head of a family residing in the State, and, as such, entitled to claim a homestead in any lands she may have owned, against any judgment recovered against her, except for debts specially excepted from the operations of the homestead laws, and there is no pretense that the debt upon which the plaintiff recovered his judgment fell within any of the excepted classes. I am unable to find anything, either in the Constitution or the statutes, which deprived her of the right to claim this exemption, and, therefore, I think the Circuit Judge erred in holding otherwise.